## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOSEPH HYLTON** | * | |
| 28526 Fairmount Road | | |
| Westover, Maryland 21871 | * | |
| | | |
| *Plaintiff* | * | |
| | | |
| **v.** | * | **CASE NO.:**_____ |
| | | |
| **SOMERSET COUNTY BOARD** | * | |
| **OF EDUCATION** | | |
| 7982A Tawes Campus Drive | * | |
| Westover, Maryland 21871 | | |
| | | |
| **SERVE:** | * | |
| **Matthew Lankford,** | | |
| **Chairman** | * | |
| **Somerset County Board** | | |
| **of Education** | * | |
| 7982A Tawes Campus Drive | | |
| Westover, Maryland 21871 | * | |
| | | |
| and | * | |
| | | |
| **MATTHEW LANKFORD** | * | |
| **c/o Somerset County Board** | | |
| **of Education** | * | |
| 7982A Tawes Campus Drive | | |
| Westover, Maryland 21871 | * | |
| | | |
| *Defendants* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Plaintiff Joseph Hylton ("**Mr. Hylton**") through counsel makes this Complaint against Defendants Somerset County Board of Education ("**Board**"), and Board Chairman Matthew Lankford ("**Mr. Lankford**"), in his personal capacity, for the deprivation of Mr. Hylton's First Amendment rights, pursuant to 42 U.S.C. § 1983, and false light defamation, and seeks declaratory and

injunctive relief, compensatory damages, punitive damages, attorneys' fees, and costs.

## PARTIES

1. Plaintiff Mr. Hylton resided in Somerset County, Maryland during the events giving rise to this case, and remains a resident of Somerset County, Maryland.

2. Defendant the Board is a government agency of the State of Maryland and the United States responsible for providing public education to children residing in Somerset County, Maryland.

3. Defendant Mr. Lankford is the Chairman of the Board and is responsible for overseeing the Board.

## JURISDICTION AND VENUE

4. This is a civil action arising under the laws of the United States. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

5. The acts and omissions giving rise to Mr. Hylton's claims occurred in Somerset County, Maryland, and there is no other district in which this action may be brought. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

6. Mr. Hylton is a Somerset County resident and taxpayer.

7. Mr. Hylton has three (3) children who attend Somerset County Public Schools.

8.    In the spring of 2025, Mr. and Mrs. Hylton became concerned that the Board was attempting to censor literature in Somerset County Public Schools by significantly restricting access to books in school libraries.

9.    On or about May 13, 2025, Mr. Hylton learned from his wife that the Board was proposing laying off school librarians to force the closure of school libraries. As a result, Mr. Hylton decided to attend the Board meeting that same night.

10.    When Mr. Hylton arrived at the Board meeting, he found a large crowd in attendance who, like himself, were there to oppose the layoffs.

11.    Surprisingly, the Board went directly into a lengthy closed executive session (approximately two (2) hours), following which they opened the meeting for the sole purpose of adjourning.

12.    As Board members dispersed, Mr. Hylton spoke with several, expressing the frustration shared by the many who had shown up for a public discussion of an important issue, only to be turned away.

13.    Initially, the Board members agreed to speak with Mr. Hylton. However, while Mr. Hylton was speaking with Board member Mary Beth Bozman ("Ms. Bozman"), the Board's attorney, Gordana Schifanelli ("Ms. Schifanelli") intervened. Ms. Schifanelli and Board member Andrew Gleason ("Mr. Gleason") admonished Mr. Hylton and attempted to divert Ms. Bozman from his line of questioning, which had to do with the proposed layoff of librarians.

14.    Outside the building, while still on Board grounds, Mr. Hylton continued speaking to Ms. Schifanelli and Mr. Lankford, the Board Chairman.

Mr. Lankford called 911 and made false, derogatory statements to law enforcement regarding Mr. Hylton.

15.    Shortly thereafter, deputies from the Somerset County Sheriff's Department arrived. Despite several witnesses speaking on Mr. Hylton's behalf, the deputies only spoke with Mr. Lankford, who falsely informed the deputies that Mr. Hylton had made threatening comments and had "scared" someone. Deputies approached Mr. Hylton and asked him to leave, which Mr. Hylton did without issue.

16.    At the following week's Board meeting, a large crowd attended, with attendees standing along the walls. Chairman Lankford addressed the crowd, delivering a biased, inaccurate account of Mr. Hylton's conduct at the prior meeting, falsely suggesting he had been "threatening," "intimidating," etc. and insinuating that he had been removed by a deputy to maintain public safety. During public comment, Mr. Hylton spoke for three (3) minutes in a controlled tone and raised appropriate concerns regarding the hiring process for the Board's attorney, Ms. Schifanelli.

17.    Mr. Hylton again attended the public Board meeting on August 19, 2025, where he spoke during public comment. Despite multiple interruptions by hecklers which went unaddressed, the Board admonished Mr. Hylton for facing the audience instead of the Board. Law enforcement officers were again called to remove Mr. Hylton from the Board meeting, apparently because he had not faced the Board at all times while speaking. Mr. Hylton left voluntarily, though under protest.

18.     Further, at the August 19, 2026 Board Meeting, other attendees who shared the same viewpoint as the Board and Chairman Lankford spoke vigorously and at length during public comment. These attendees were not admonished during their public comment, nor was law enforcement called to remove them from the Board meeting.

19.     Subsequently, Mr. Hylton received a letter from the Acting Director of Operations for Somerset County Public Schools Jonathan Hill ("Mr. Hill"). The letter informed Mr. Hylton that he would not be welcome to return to regular Board meetings until he met with Mr. Hill to "review guidelines." Mr. Hill's letter to Mr. Hylton is attached as **Exhibit A** and incorporated by reference.

20.     Mr. Hylton met with Mr. Hill on August 26, 2025, where Mr. Hill was unable to clearly articulate which guidelines Mr. Hylton violated at the Board meeting on August 19, 2025. Mr. Hill cited to Board Policy No. 100-21; however, neither Policy No. 100-21 nor any other Board Policy presents a clear and tangible policy that Mr. Hylton could reasonably be said to have violated. Following the meeting, Mr. Hylton was informed he could resume attendance at Board meetings provided he "behaved himself."

21.     Shortly thereafter, Board Chairman Mr. Lankford barred public attendance at Board meetings altogether for the months of September and October;  instead, the meetings were held virtually, and members of the public who wished to address the Board were required to submit written comments, which would be addressed on the record.

22.    Mr. Hylton submitted a written comment expressing concerns regarding the Board meetings being held virtually, the potential layoff of school librarians, and the censoring of books for the following Board meeting, which was not addressed on the record or in any other fashion.

23.    On September 18, 2025, Mr. Hylton wrote a letter to the Board and inquired why his written comment was not addressed. A copy of Mr. Hylton's September 18, 2025 letter is attached as **Exhibit B** and incorporated by reference.

24.    Board Chairman Mr. Lankford replied to Mr. Hylton's letter via email on September 19, 2025, stating: "The Board has decided to conduct virtual board meetings due to the increased violence, vitriol and disruption in the Boardroom." Notably, there is no record of violence at any Board meeting.

25.    Subsequently, before each Board meeting, Mr. Hylton submitted public comments to the Board by email, as well as pre-recorded videos. Board members acknowledged receiving these materials, but Mr. Hylton's submissions were not read or played during public comment, even though they addressed matters of public interest.

26.    On December 16, 2026, Mr. Hylton attended another Board meeting after signing up for public comment in advance. During Mr. Hylton's remarks, Board Chairman Mr. Lankford interrupted mid-statement and again called for law enforcement to remove Mr. Hylton, ostensibly because Mr. Hylton had addressed Board member Ms. Bozman directly and by name. Notably, this is not a violation of any rule or protocol adopted by the Board.

27.     Further, at the December 16, 2026 Board Meeting, as with the August 19, 2026 Board Meeting, other attendees who shared the same viewpoint as the Board and Chairman Lankford spoke vigorously and at length during public comment. These attendees were not admonished during their public comment, nor was law enforcement called to remove them from the Board meeting.

28.     Following the December 16, 2026 Board meeting, Chairman Lankford formally banned Mr. Hylton from attending all Board meetings. A letter was sent to Mr. Hylton's home address, and Mr. Hylton received an email stating he was required to meet with school officials again before any future participation in Board meetings would be considered. A copy of the letter and email received by Mr. Hylton is attached as **Exhibit C** and **Exhibit D**, respectively, and incorporated by reference.

29.     At present, Mr. Hylton is unable to attend any Board meetings because of Chairman Lankford's ban.

## CAUSES OF ACTION

### COUNT I: DEPRIVATION OF FIRST AMENDMENT RIGHTS
### (42 U.S.C. § 1983)

30.     The allegations in Paragraphs 1 – 29 are incorporated by reference.

31.     Mr. Hylton engaged in protected First Amendment activity by speaking at Board meetings during public comment, and by submitting written/video comments to be read and answered at virtual Board meetings, regarding, among other things, the proposed termination of school librarians.

Mr. Hylton's oral, written, and video submissions were presented in a peaceful and nondisruptive manner.

32.     Mr. Hylton's oral, written, and video submissions constitute peaceful participation in a public process and did not interfere with or disrupt the Board meetings, nor were they contrary to any rule or regulation promulgated by the Board. Indeed, the Board permitted other members of the public who shared the same viewpoint as the Board and Chairman Lankford to speak and/or submit written comments during Board meetings.

33.     By repeatedly interrupting Mr. Hylton during lawful public comment, removing Mr. Hylton from Board meetings despite no cited policy violations, restricting Mr. Hylton's submitted public comment materials, and formally banning Mr. Hylton from attending Board meetings, the Board and Board Chairman Lankford substantially interfered with Mr. Hylton's First Amendment right of freedom of speech. The discrimination against Mr. Hylton by the Board and Chairman Lankford was unreasonable and constituted unlawful viewpoint and content discrimination. The Board and Chairman Lankford's suppression of Mr. Hylton's speech based upon its content and viewpoint was not tailored to serve any governmental interest.

34.     By repeatedly interrupting Mr. Hylton during lawful public comment, removing Mr. Hylton from Board meetings despite no cited policy violations, restricting Mr. Hylton's submitted public comment materials, and formally banning Mr. Hylton from attending Board meetings, the Board and Board Chairman Mr. Lankford substantially interfered with Mr. Hylton's First

Amendment right to peaceably assemble. The discrimination by the Board and Chairman Lankford was unreasonable and constituted unlawful viewpoint and content discrimination. The Board and Chairman Lankford's suppression of Mr. Hylton's speech based upon its content and viewpoint was not tailored to serve any governmental interest.

35.    By repeatedly interrupting Mr. Hylton during lawful public comment, removing Mr. Hylton from Board meetings despite no cited policy violations, restricting Mr. Hylton's submitted public comment materials, and formally banning Mr. Hylton from attending Board meetings, the Board and Board Chairman Mr. Lankford substantially interfered with Mr. Hylton's First Amendment right to petition the Government for a redress of grievances. The discrimination by the Board and Chairman Lankford was unreasonable and constituted unlawful viewpoint and content discrimination. The Board and Chairman Lankford's suppression of Mr. Hylton's speech based upon its content and viewpoint was not tailored to serve any governmental interest.

36.    The actions of Defendants violate clearly established statutory or constitutional rights of which a reasonable person would have known.

37.    As a direct and proximate result of the substantial interference in Mr. Hylton's First Amendment rights perpetrated by the Board and Board Chairman Mr. Lankford, Mr. Hylton has endured severe emotional distress, and has suffered irreparable harm to his character and standing in the community.

38. The conduct of the Board and Board Chairman Mr. Lankford was willful, wanton, made with malicious intent, and undertaken in reckless disregard of Mr. Hylton's federally protected rights.

WHEREFORE, Plaintiff Mr. Hylton respectfully requests that this Honorable Court:

A. Find and declare that Mr. Hylton's First Amendment rights were violated;

B. Enjoin the Board from further trespassing Mr. Hylton from Board meetings;

C. Award Mr. Hylton compensatory damages;

D. Award Mr. Hylton punitive damages;

E. Award Mr. Hylton his reasonable attorney's fees and costs; and

F. Grant such other and further relief as justice so requires.

## COUNT II: FALSE LIGHT DEFAMATION

39. The allegations contained in Paragraphs 1 – 38 are incorporated by reference and fully restated herein.

40. From on or about May 13, 2025 to present, the Board and Board Chairman Mr. Lankford have knowingly engaged in a targeted and persecutorial campaign to place Mr. Hylton in a false light before a small rural community.

41. The Board and Board Chairman Mr. Lankford have, on numerous occasions, falsely portrayed Mr. Hylton to be violent and unreasonable in order to controvert his political viewpoints regarding the Somerset County Public School educational system.

42.    Not only have the Board and Board Chairman Mr. Lankford made false and degrading statements about Mr. Hylton, but they went a step further by calling law enforcement to remove Mr. Hylton from public Board meetings on numerous occasions.

43.    These incidents regarding the Board, Board Chairman Mr. Lankford, and Mr. Hylton occurred at public Board meetings that were full of members of the community; indeed, some of the meetings were standing room only.

44.    At no point was Mr. Hylton taken into custody by law enforcement. The sole reason why law enforcement was called by the Board and Board Chairman Mr. Lankford was to present Mr. Hylton in a false light to members of a small rural community.

45.    As a direct and proximate result of the actions taken by the Board and Board Chairman Mr. Lankford, the character and reputation of Mr. Hylton was harmed, his standing and reputation in a small rural community was impaired, and he suffered mental anguish and personal humiliation.

46.    Moreover, Mr. Hylton has been unable to participate in the public process in a manner prescribed to him under the First Amendment of the United States Constitution, which was indeed the overarching goal of the Board and Board Chairman Mr. Lankford.

47.    The conduct of the Board and Board Chairman Mr. Lankford was willful, wanton, made with malicious intent, and undertaken in reckless disregard of Mr. Hylton's federally protected rights.

WHEREFORE, Plaintiff Mr. Hylton respectfully requests that this Honorable Court:

A.      Award Mr. Hylton compensatory damages;

B.      Award Mr. Hylton punitive damages;

C.      Award Mr. Hylton his reasonable attorney's fees and costs; and

D.      Grant such other and further relief as justice so requires.

*/s/ Robin R. Cockey Esquire*
ROBIN R. COCKEY, ESQUIRE
Federal Bar No.: 02657
COCKEY, BRENNAN & MALONEY, P.C.
313 Lemmon Hill Lane
Salisbury, Maryland 21801
Telephone: 410-546-1750
Fax: 410-546-1811
Email: rrcesq@cbmlawfirm.com
*Attorney for Plaintiff*